

FILED & JUDGMENT ENTERED
Christine F. Winchester

January 15 2025

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_____
Ashley Austin Edwards
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION

In re:

**Jacquelyn J. Ray,**

Debtor.

Case No. 21-30431
Chapter 7

## OPINION AND ORDER

**THIS MATTER** is before the Court upon the Debtor's *Motion for Turnover, for Sanctions, and to Enforce Discharge Injunction* (the "Motion").[1] The Court conducted two hearings on the Motion on November 5, 2024 (the "First Hearing") and December 10, 2024 (the "Second Hearing"). R. Keith Johnson appeared on behalf of the Debtor. Joshua D. Zimberg appeared on behalf of the United States of America as counsel for the Internal Revenue Service. Heather W. Culp appeared on behalf of the Bankruptcy Administrator. Jenny P. Holman appeared on behalf of herself as the former Chapter 13 trustee. The Chapter 7 trustee did not appear at either of the hearings. Following the hearings, the Court took the matter under advisement and now renders its opinion.

---

[1] [D.I. 105].

1

**FINDINGS OF FACT**

**I.      Events Leading Up to Entry of Discharge**

On July 23, 2021, the Debtor filed a voluntary petition under Chapter 13 of the Bankruptcy Code. On August 24, 2021, the Internal Revenue Service ("IRS") filed a proof of claim in this case in the amount of $215,904.05, representing the amount owed for tax years 2015 through 2018. On October 4, 2021, the Debtor objected to the IRS' claim (the "Claim Objection"). The IRS responded to the objection on November 3, 2021. Between the time that the IRS filed its response and the hearing on the Claim Objection, the IRS amended its claim twice, and on February 3, 2022, the Court confirmed the Debtor's Chapter 13 plan.

After numerous continued hearings, on February 15, 2023, the Court entered an order (the "Claim Objection Order") overruling the objection to the IRS' claim and allowing the IRS' claim in full with the following allocations: (1) $78,600.52 as a secured claim for pre-petition tax liabilities, penalties, and interest for tax year 2015 as well as pre-petition tax liabilities and penalties for tax year 2016; such claim was a tax lien secured by the Debtor's residence in Gastonia, North Carolina (the "Secured Claim"); (2) $30,035.82 as an unsecured priority claim for the pre-petition tax liabilities and interest for the tax year 2018 (the "Priority Claim");[2] and (3) $107,267.71 as a general unsecured claim for the pre-petition interest for tax year 2016 as well as pre-petition tax liabilities and interest for tax year 2017 (the "General Unsecured Claim"). Following the ruling in the Claim Objection Order, the IRS amended its claim once more. On March 31, 2023, the Chapter 13 trustee sent two distributions to the IRS under the Chapter 13 plan totaling $2,653.77.

---

[2] Notably, at the First Hearing, counsel for the IRS informed the Court that post-petition interest continued to accrue under federal law on the Debtor's pre-petition 2018 tax debt as gap interest. Counsel for the IRS did not specify how much gap interest was owed but claimed that at least some, if not all, of the Tax Refund (defined below) would be offset by gap interest.

2

Thereafter, the Debtor filed a motion to sell her residence and requested a particular disbursement of the sale proceeds (the "Sale Motion"). As it relates to this matter, the Debtor requested authority to disburse $78,600.52 to the IRS at closing to pay off the Secured Claim. On August 8, 2023, the Court granted the Sale Motion and authorized the disbursement requested by the Debtor to the IRS. On August 10, 2023, the sale closed, and $78,600.52 was disbursed to the IRS. Subsequently, on August 31, 2023, the Chapter 13 trustee disbursed an additional $43,360.27 to the IRS, which paid off the IRS' Priority Claim and paid $13,324.45 on the General Unsecured Claim—roughly 12% of the General Unsecured Claim.[3]

After the Chapter 13 trustee alleged that the Debtor defaulted under the Chapter 13 plan, on September 25, 2023, the Debtor converted the case to one under Chapter 7 of the Bankruptcy Code. A Chapter 7 trustee was appointed that same day, and the Chapter 13 trustee was discharged on October 6, 2023. Less than four months later, on January 2, 2024, the Court entered an order granting the Debtor a discharge under section 727 of the Bankruptcy Code (the "Discharge Order"), and the case was closed the next day.

## II.    Post-Discharge Events

Five months after the discharge was granted, on May 6, 2024, the Debtor received a notice from the IRS (the "May Notice") indicating that she was entitled to a tax refund of $5,262.00 (the "Tax Refund") that would be applied "to an amount owed for 2018." The notice indicated that the amount owed for 2018—$35,532.60—was "due immediately." The Debtor contacted the IRS and informed the agent that she had received a discharge in her Chapter 7 bankruptcy case and said that the 2018 taxes were paid in the Chapter 13 case.[4] On May 10, 2024, the paralegal for Keith

---

[3] This meant that all pre-petition debts owed to the IRS for tax years 2015 and 2018 were paid in full and that pre-petition tax liabilities and penalties for 2016 were paid. The only remaining amounts to pay under the Claim Objection Order in this bankruptcy case were pre-petition interest for tax year 2016 and pre-petition tax liabilities and interest for tax year 2017.
[4] As was discussed above, the Debtor herself may actually have been liable for gap interest for tax year 2018.

3

Johnson, counsel for the Debtor, contacted Joshua Zimberg, counsel for the United States, by email asking him to "please provide to me a response as to the status of this matter after you have had a chance to investigate [the] same." Mr. Zimberg did not respond to this email. On June 11, 2024, Mr. Johnson's paralegal emailed Mr. Zimberg, informing him that they "ha[d] not yet received a response to the [May 10th] email" and requesting that he "[p]lease respond as soon as possible." Almost a month later, on July 9, 2024, Mr. Zimberg responded to the emails. Later, the Debtor received notice from an appeals officer at the IRS that the Debtor or her representative should contact the appeals officer to address the matter. When Mr. Johnson finally spoke to the appeals officer, the officer declined to discuss the matter with counsel.

On August 19, 2024, the Debtor filed an *ex parte* motion to reopen the bankruptcy case, which the Court granted the following day. The same day that the case was reopened, the Debtor filed the Motion that is before the Court, arguing that the IRS should be (1) ordered to turnover the Tax Refund, (2) sanctioned for violating the discharge injunction, and (3) enjoined from contacting the Debtor regarding her tax liability. Thereafter, in September 2024, the IRS sent three additional notices to the Debtor (the "September Notices")[5] demanding that she pay $33,406.78 in past-due taxes for tax years 2015, 2016, and 2017—all of which had been discharged (the "Discharged Tax Years").

On October 31, 2024, the IRS filed its response to the Motion which acknowledged that "certain payments from the Trustee to the IRS as payment for the Debtor's 2018 priority claim were incorrectly allocated to" the Discharged Tax Years. But the IRS argued that it could still set

---

[5] Between the May Notice and September Notices (collectively, the "2024 Notices"), only the May Notice contained all of the pages identified on the face of the notice. The September Notices only provided the first page of each notice but indicated there were 3–4 pages that should be attached to each notice. Counsel for the IRS failed to object to the admission of the September Notices as full and complete copies of such notices, and the September Notices were admitted into evidence without the additional pages.

4

off part of the Debtor's 2023 tax return to pay the outstanding gap interest for tax year 2018. The IRS went on to argue that (1) the "turnover" action was actually a "tax return" action that would need to be litigated outside of this Court, (2) the setoff of the Tax Refund did not violate the discharge injunction, (3) the request for damages and costs failed because the Debtor did not exhaust her administrative remedies first, and (4) the Court may not "enjoin the IRS from collecting taxes excepted from the discharge."

### III.   Hearings

At the First Hearing, the Court heard witness testimony from the Debtor and allowed a proffer from the former Chapter 13 trustee, with the consent of all parties in attendance, regarding payments made before the discharge was granted. The Debtor entered the 2024 Notices into evidence. The IRS did not present any evidence. Much of the hearing focused on the alleged unlawful conduct by the IRS and the Debtor's alleged failure to exhaust the administrative remedies available to her before coming to this Court. The Bankruptcy Administrator acknowledged the requirement for the Debtor to exhaust administrative remedies.

The Court continued the matter and requested additional briefing from the Debtor and IRS to supplement new arguments raised at the First Hearing. At the Second Hearing, the Court heard additional argument from the parties. Mr. Zimberg admitted that the September Notices were "auto-generated and . . . should not have been sent." Mr. Zimberg went on to assert that, "If any other notices are sent regarding th[e Discharged Tax Years], those should be ignored, or Debtor's counsel can reach out to me and I will look into that immediately." On the exhaustion of administrative remedies, Mr. Johnson argued that it is "ridiculous" to expect the Debtor to go through "the IRS appeals' process before this Court can enforce the discharge injunction" and added that the Court has authority to "enforce its own orders." Thereafter, the Court took the matter

5

under advisement. The facts contained in this opinion are not in dispute; the parties only disagree on the application of these facts to the law.[6]

## DISCUSSION

The Debtor requests three forms of relief in the Motion: (i) turnover of property, (ii) the assessment of damages upon the IRS, and (iii) injunctive relief against the IRS. All three requests for relief fail at this time for the reasons stated below.

### I.     Turnover of Property

First, the Debtor seeks entry of an order directing the IRS to turn over and deliver to the Debtor the Tax Refund, with interest as appropriate. Section 542 of the Bankruptcy Code governs the turnover of property to the estate. 11 U.S.C. § 542. Federal Rule of Bankruptcy Procedure 7001 mandates that actions brought under section 542, including "a proceeding to recover money or property," must be brought as an adversary proceeding. *See* Fed. R. Bankr. P. 7001(a). This includes any proceeding to obtain a tax refund. *See* Collier on Bankruptcy ¶ 7001.02 (16th ed. 2024) (citing *In re Dunmore*, 262 B.R. 85, 86 (Bankr. N.D. Cal. 2001)). The court may not entertain such a request by motion alone. Section 543 of the Bankruptcy Code, which governs the turnover of property by prepetition custodians, does not apply. *See* 11 U.S.C. § 543. Here, the Debtor improperly moved for the Court to order the turnover of the Tax Refund instead of initiating an adversary proceeding, which is required by Bankruptcy Rule 7001. Therefore, the turnover of property requested by the Debtor is denied.

---

[6] The Court considered the full record in this case. For ease of reference, here are certain pleadings and other documents that the Court references in this opinion: Voluntary Bankruptcy Petition [D.I. 1], Proof of Claim #4, Objection to Claim #4 [D.I. 26], Response of United States to Objection to Claim of IRS [D.I. 35], Order Confirming Chapter 13 Plan [D.I. 44], Order Overruling Objection to Claim [D.I. 62], Trustee's Motion to Dismiss or Modify Plan [D.I. 63], Motion to Sell Property [D.I. 73], Order Granting Motion to Sell [D.I. 79], Notice of Conversion of Case Under Chapter 13 to a Case Under Chapter 7 [D.I. 82], Order Discharging Chapter 13 Trustee [D.I. 94], Order Discharging Debtor [D.I. 99], Final Decree Closing Case [D.I. 100], *Ex Parte* Motion to Reopen Bankruptcy Case [D.I. 103], Order Granting Motion to Reopen Bankruptcy Case [D.I. 104], Motion to Turnover, for Sanctions, and to Enforce Discharge Injunction [D.I. 105], and United States' Response to Debtor's Motion for Turnover, for Sanctions, and to Enforce Discharge Injunction [D.I. 112].

**II.     Damages**

Next, the Debtor requests that the Court order the IRS to pay damages to the Debtor relating to her time away from work to testify in this matter as well as the attorney's fees and costs incurred by Debtor's counsel in preparing and prosecuting the Motion. The Debtor argues that these "sanctions" are necessary due to the IRS' "failure to comply with applicable Bankruptcy Laws, and for violation of the discharge injunction of the Debtor."

**A.     Violations of Discharge Injunction**

"The principal purpose of the Bankruptcy Code is to grant a fresh start to the honest but unfortunate debtor." *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 367 (2007) (citation omitted). The Bankruptcy Code accomplishes that goal, in part, by offering debtors a "discharge" of certain debts. *See generally* 11 U.S.C. §§ 524, 727 (explaining when and how the bankruptcy discharge applies). The discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." 11 U.S.C. § 524(a)(2). With certain exceptions, "debtors who file a Chapter 7 bankruptcy receive a discharge," which is the essence of the fresh start for a debtor. *See In re Malone*, No. 10-31855, 2012 WL 162374, at *4 (Bankr. W.D.N.C. Jan. 19, 2012); 11 U.S.C. § 727(a).

The Supreme Court of the United States recently addressed the standard governing when a court should hold a creditor in civil contempt for violations of a discharge order. *Taggart v. Lorenzen*, 587 U.S. 554, 557 (2019). By applying "long-standing interpretive principle[s]," the *Taggart* court held that "a court may hold a creditor in civil contempt for violating a discharge order if there is *no fair ground of doubt* as to whether the order barred the creditor's conduct." *Id.*

But the court also recognized that a different standard might be appropriate if a statute uses the word "willful" when describing the violation. *See id.* at 564–65.

Beyond the general analysis of discharge order violations in *Taggart*, and as it relates specifically to the IRS, the Internal Revenue Code supplies the exclusive remedy to obtain damages if any officer or employee of the IRS *willfully* violates the discharge injunction created by section 524 of the Bankruptcy Code "in connection with any collection of Federal tax with respect to a taxpayer." *See* 26 U.S.C. § 7433(e)(1). The meaning of the word "willful" "is often dependent on the context in which it appears." *Taggart v. Lorenzen*, 587 U.S. at 565 (citation omitted). A violation of the discharge injunction is "willful" if (1) a "creditor knew of the discharge injunction" and (2) "intended the actions that violated the injunction." *In re Malone*, No. 10-31855, 2012 WL 162374, at *6 (Bankr. W.D.N.C. Jan. 19, 2012) (citation omitted).[7]

But willfulness can also "be established by inaction when it amounts to a reckless disregard of the" discharge injunction. *See In re Shealy*, 90 B.R. 176, 179 (Bankr. W.D.N.C. 1988) (citing *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 126–27 (1985)); WILLFUL, Black's Law Dictionary (12th ed. 2024) (emphasis added) ("A voluntary act becomes willful, in law, only when it involves conscious wrong or evil purpose on the part of the actor, or at least *inexcusable carelessness*, whether the act is right or wrong."). For example, in *Shealy*, the South Carolina Tax Commission (the "Commission") repeatedly sent notices to the debtors after their bankruptcy case was filed demanding the payment of past due taxes and "warning that failure to pay" would result in additional consequences. *See id.* at 177. The debtors received at least five notices from the Commission during the bankruptcy case relating to the collection of taxes. *See id.* at 177. After the

---

[7] The *Taggart* court expressly declined to "decide whether the word 'willful' supports a standard akin to strict liability," which is the test used by this court. *See* 587 U.S. at 656. Because the statute at issue in this case uses the word "willful," and the *Taggart* court declined to disturb the context-driven application of this word, it is appropriate to maintain the strict liability framework here.

debtors moved to sanction the Commission for violating the automatic stay, the Commission asserted that "the cause of the violation of the stay by the various notices . . . was a clerical error," which was triggered by "the failure to locate the tax claim file and flag it." *See id.* at 178–79. Although the notices were "spawned by the mindless functioning of the Commission's computer system," the court went on to find that the Commission *willfully* violated the automatic stay. *Id.* at 179–80. The Commission "received multiple notices [of the bankruptcy case], yet took no action until it was threatened with sanctions for violating the stay." *Id.* at 179–80. Even then, the Commission went on to "to file a proof of claim" and "generat[ed] another series of threatening notices to the debtors." *Id.* at 180. The court found that "[t]his pattern of inattention . . . demonstrates such a disregard for statutory duty as to amount to a 'willful' act." *Id.*

Here, the IRS acknowledged that it acted in ways that violated the discharge injunction in attempting to collect the Debtor's discharged federal tax liabilities.[8] Through the application of section 524 of the Bankruptcy Code, the Discharge Order automatically enjoined the IRS from acting in any way to collect or offset the Debtor's discharged debt, including all federal tax liabilities from the Discharged Tax Years. Despite this clear statutory duty, the IRS sent the September Notices to collect these discharged liabilities. Of course, the 2018 and 2023 federal tax liabilities were non-dischargeable, so the discharge injunction does not operate against those debts.

Although the September Notices may have been automatically generated by the IRS' system, the IRS did not and has not taken sufficient actions to prohibit these notices from being generated. Instead, the IRS sent the September Notices after three years of actively participating in the bankruptcy case, one of which was post-discharge, and after the Debtor filed the Motion, which highlights the risk of these post-discharge communications. The IRS did not indicate when

---

the notices would stop being sent to the Debtor. Mr. Zimberg even suggested that the Debtor should "ignore[]" any additional notices that the IRS may send in violation of the discharge injunction.[9] This suggestion does not excuse the IRS of its duties under section 524 of the Bankruptcy Code. In fact, these actions and statements are worse than that of the Commission in *Shealy*, which modified its conduct after being threatened with sanctions.

The IRS violated the discharge injunction by sending the September Notices and warns that it may continue to send notices in violation of the discharge injunction. Such action represents, a reckless disregard for the IRS' statutory duty under section 524 of the Bankruptcy Code and amounts to willful conduct. If any other creditor acted in this way, the Court would likely sanction the offending party for such reckless violations of the Bankruptcy Code.

**B.      Exhaustion of Administrative Remedies**

The Internal Revenue Code codifies the procedure for seeking damages against the IRS in this circumstance. The "exclusive remedy" for recovering damages against the IRS for willful violations of the discharge injunction is a petition under 26 U.S.C. § 7433(e). 11 Collier on Bankruptcy ¶ TX4.02(4) The amount allowed for damages is "equal to the lesser of $1,000,000 ($100,000, in the case of negligence) or the sum of (1) actual, direct economic damages sustained by the plaintiff as a proximate result of the reckless or intentional or negligent actions of the officer or employee, and (2) the costs of the action." 26 U.S.C. § 7433(b).

Before entering a judgment for damages under subsection (b) of 26 U.S.C. § 7433, a court must determine "that the plaintiff has exhausted the administrative remedies available to such plaintiff within the Internal Revenue Service." 26 U.S.C. § 7433(d)(1). Although there is disagreement among Fourth Circuit bankruptcy courts, most courts to address this issue have found

---

[9] The Court appreciates the IRS' candor during the Hearings, where it acknowledged and apologized for the September Notices.

10

that the exhaustion requirement applies to plaintiffs seeking relief under subsection (e) of 26 U.S.C. § 7433. *See, e.g., In re Cooper*, No. 10-11701C-13G, 2011 WL 165830, at *2 (Bankr. M.D.N.C. Jan. 19, 2011) ("The damages that are recoverable under section 7433(e) are specified in section 7433(b) and under the clear language of section 7433(d), the damages that are recoverable under section 7433(b) may not be awarded unless the claimant has exhausted the administrative remedies available to the claimant."); *In re Consol. Health Servs., Inc.*, No. 08-00103-8-SWH, 2013 WL 4409695, at *3 (Bankr. E.D.N.C. Aug. 14, 2013) (same); *but see In re Graham*, No. 99-26549-DHA, 2003 WL 21224773, at *2 (Bankr. E.D. Va. Apr. 11, 2003) ("There is no mention in 26 U.S.C. § 7433(e), the section devoted exclusively to bankruptcy violations, of the need to exhaust administrative remedies."). The administrative remedies relevant to this code section can be found in title 26 of the Code of Federal Regulations.

The Code of Federal Regulations is the codification of the Federal Register. *See* 44 U.S.C. § 1510(b); *Louis Leustek & Sons, Inc. v. United States*, 41 Fed. Cl. 657, 669 (1998). "Just as everyone is charged with knowledge of the United States Statutes at Large, Congress has provided that the appearance of rules and regulations in the Federal Register gives legal notice of their contents." *Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384–85 (1947) (citing 44 U.S.C. § 307). These regulations "have the force and effect of federal law" and must be followed if they have been "properly promulgated." *See Boron Oil Co. v. Downie*, 873 F.2d 67, 71 (4th Cir. 1989) (citing *Chrysler Corp. v. Brown*, 441 U.S. 281, 295–96 (1979)).

Here, the parties acknowledge that the Debtor did not exhaust the administrative remedies available to her within the IRS before seeking relief in this Court. The Debtor and her counsel were provided with legal notice of the relevant statute and regulations, which are published in the United States Code and Federal Register, respectively. Beyond publication notice, the IRS appears to have

provided how to find these requirements, through a link on the second page of each notice under a section titled "Bankruptcy," to the Debtor in the notices sent to her in May 2024 and September 2024.[10] The Debtor's failure to comply with the exhaustion requirement cannot be excused as the requirements set forth in the statute and regulations have the force and effect of federal law and are statutory prerequisites to the Court granting the relief requested.

C. **Equal Application of Federal Law**

This Court is guided by federal law and cannot "pick and choose among congressional enactments," whether they are found within the Bankruptcy Code or elsewhere. *See Pittsburgh & L. E. R. Co. v. Ry. Labor Executives' Ass'n*, 491 U.S. 490, 510 (1989) (quoting *Morton v. Mancari*, 417 U.S. 535, 551 (1974)). "[W]hen two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Id.* (quoting *Morton*, 417 U.S. at 551 (1974)). Here, the Debtor argues that the discharge injunction is a creation of this Court that may be enforced without requiring the Debtor to first undergo the process to obtain administrative remedies described in section 7433 of the Internal Revenue Code.

Although this Court entered the Discharge Order, the discharge injunction is created by federal statute in 11 U.S.C. § 524(a)(2). This Court may enforce the discharge injunction through civil contempt or other means in certain circumstances. *See Taggart,* 587 U.S. at 557. But the exclusive remedy for a Debtor seeking damages against the IRS for willful violations of the discharge injunction in connection with the collection of federal taxes is found in section 7433 of the Internal Revenue Code. That statute goes so far as to strip the Court of any equitable authority

---

[10] The Court infers that the September Notices may have contained the above-referenced information on additional missing pages because (1) the first page of each of the September Notices was similar to the first page of the May Notice and (2) each of the September Notices admitted at the Hearings indicated that there were missing pages. But the Court does not rest its holding on this missing information. Instead, the Debtor had legal notice of the requirements set forth in the United States Code and Code of Federal Regulations through their publication.

to grant damages under section 105 of the Bankruptcy Code. 26 U.S.C. § 7433(e)(2)(A). This Court may not ignore the clear expression of congressional intent for this statutory prerequisite and may only allow damages after the Debtor exhausts the relevant administrative remedies. Thus, at this time, the Court cannot enter a judgment for damages caused by a violation of the discharge injunction. Of course, if the administrative remedies are subsequently exhausted, further relief may be granted if appropriate at that time.

### III.   Injunctive Relief

Lastly, the Debtor seeks entry of an order, pursuant to the discharge injunction, prohibiting the IRS from contacting the Debtor in any way relating to any tax liability prior to her discharge date. "[A] discharge order 'operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset' a discharged debt." *Taggart v. Lorenzen*, 587 U.S. 554, 560 (2019) (quoting 11 U.S.C. § 524(a)(2)). "The IRS, because of its status as a creditor, is bound by the injunction provisions of the Bankruptcy Code after a discharge of a tax claim has been entered . . . ." 11 Collier on Bankruptcy ¶ TX4.02(4).

The Anti-Injunction Act prohibits this Court from granting additional injunctive relief in regard to the IRS' assessment or collection of taxes beyond that which was discharged and is subject to the discharge injunction. *See* 26 U.S.C. § 7421(a). Specifically, the Act provides that, unless certain statutory exceptions apply, "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." *Id.* The Anti-Injunction Act "protects the [Federal] Government's ability to collect a consistent stream of revenue[] by barring litigation to enjoin or otherwise obstruct the collection of taxes." *CIC Servs., LLC v. Internal Revenue Serv.*, 593 U.S. 209, 212 (2021) (quoting *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 543

(2012)). "Because of the Act, a person can typically challenge a federal tax only after he pays it, by suing for a refund." *Id.* (citing *Nat'l Fed'n of Indep. Bus.*, 567 U.S. at 519).

Here, the IRS is a creditor of the Debtor by virtue of its claims against the Debtor. This means that the IRS is enjoined from commencing or continuing an action, employing process, or otherwise acting to collect, recover, or offset any liabilities from the Discharged Tax Years. As stated above, relief may be sought under 26 U.S.C. § 7433(e) only after administrative remedies are exhausted for the IRS' willful violations of the discharge injunction.

But the Anti-Injunction Act prohibits this Court from enjoining the IRS from contacting the Debtor regarding tax liabilities beyond the scope of the discharge injunction, especially for tax debts that were not discharged. If the Debtor believes that a tax has been unfairly assessed against her or otherwise objects to federal tax collection practices, the Debtor may sue to obtain a refund of these tax liabilities. But the Debtor's attempt to restrain the IRS from assessing or collecting taxes against her cannot be maintained in this Court. Therefore, the injunctive relief requested by the Debtor is denied.

## CONCLUSION

For the reasons set forth above, it is **ORDERED** that:

**(1)**  The relief related to the turnover of property is **DENIED WITHOUT PREJUDICE**;

**(2)**  The relief related to the assessment of damages is **DENIED WITHOUT PREJUDICE**;

**(3)**  The injunctive relief is **DENIED**;

**(4)**  This Court shall retain jurisdiction over any and all matters arising from or related to the implementation, enforcement, or interpretation of this order.

**IT IS SO ORDERED.**

**This order has been signed electronically.**           **United States Bankruptcy Court**
**The Judge's signature and Court's seal**
**appear at the top of this order.**